ADAMS, Justice.
Plaintiff William E. Williamson appeals from the Conecuh County Circuit Court’s judgment entered on a jury verdict in favor of defendant Richard Raymond. We affirm.
The facts of this case are as follows:
In March 1983, Raymond was the owner of the Community Grocery in Bermuda, Alabama. He hired Williamson to paint the exterior of the store and, on March 19, 1983, Williamson arrived to begin painting.
According to the testimony adduced at trial, when Williamson arrived he saw several aluminum conveyors leaning up against one of the exterior walls of the store. There were ten or eleven of these conveyors, and each was approximately ten feet long and weighed between fifteen and fifty pounds. Raymond testified that he had used the conveyors to unload merchandise from trucks, and that the conveyors were tied together, ready to be sold. He further stated that it would have been necessary to untie the conveyors before they could be moved.
It is undisputed that the building could not have been painted completely without first removing the conveyors. Moreover, these conveyors had sharp edges, although not as sharp as a knife, and a person could be cut by one of these edges if he were not careful.
Williams testified that when he saw the conveyors he knew that they would have to be moved in order for him to properly paint the building. He stated that the conveyors were not tied or hooked together in any way, so he began moving them, but, because they were heavy and awkward to *611 move, he stopped to ask for help. He stated that he went inside the store and asked Raymond’s son and brother-in-law for help, but they refused, so he went back outside and began painting the building, working away from the conveyors. He testified that at about 3:00 that afternoon he reached the part of the building where the conveyors were, but that they were then scattered on the ground, “crossed up like stovewood,” a couple of feet from the wall of the building. He stated that he had not seen anyone move the conveyors during the day, and that it looked to him as though they had just fallen to the ground.
Williamson testified that he positioned his ladder between the conveyors and leaned it against the building. While he was attempting to pick up a container of paint, he caught his leg on one of the hooks protruding from the conveyors, and in doing so cut a gash in his leg which went all the way to the bone. He was taken to a hospital, where the bleeding was stopped and his wound was stitched.
Upon his return to the hospital two weeks later to have the stitches removed, Williamson was informed that his leg was infected. His leg did not heal properly, and he eventually developed gangrene. At trial he stated that he had been going to his doctor for treatment regarding this wound for over two years, and that for the first year he was unable to do any work.
On March 8, 1984, Williamson filed suit, alleging that he was an invitee of Raymond and that Raymond was negligent in allowing certain conveyors to remain in the area where Williamson was working. On July 12, 1985, Williamson responded to Raymond’s request for admission of facts, admitting that the conveyors were open and obvious to his view when he arrived at the store, that he had moved at least three of the conveyors prior to his injury, that he had placed his paint can between the conveyors, and that he had been aware that the conveyors had hooks on them. The case was tried before a jury, a verdict was returned in favor of Raymond, and judgment was accordingly entered. The court denied Williamson’s motion for new trial, and this appeal followed.
Williamson asserts three reasons why the trial court’s judgment should be reversed. First, he argues that the trial court erred when it did not allow him to testify about whether the employees at the store volunteered to move the conveyors. According to the following excerpts from Williamson’s direct examination, at two different times he testified that he asked Raymond’s son and brother-in-law if they would help him, but that they refused:
Q. Was his son-in-law or brother-in-law and son operating the store?
A. They was, his son and brother-in-law.
Q. What, if anything, did you tell them about those conveyors?
A. I told them that they had to be moved and I had moved three or four of them and I wasn’t able. My shoulders and back was hurting, had arthritis, would they help me move them. They shook their heads and said no.
[[Image here]]
Q. How many times did you go in the store building for the purpose of discussing these conveyors?
A. Twice.
Q. What time was that?
MR. JACKSON: Judge, I’m going to object to this line of questioning again. There is just no duty.
THE COURT: Overruled. There has been some evidence in here of that before and I overrule you on this particular area.
Q. How many times did you go in the store building for the purpose of discussing the conveyors?
A. Twice.
Q. Was that in the morning or afternoon or when was it?
A. In the morning.
Q. And who had you had your discussions with?
A. Mr. Raymond’s son and his brother-in-law.
Q. What did you say to them?
*612 A. I told them that I needed them moved. And they said that they couldn’t help. They didn’t come out at all.
It is clear that the court did allow Williamson to testify about whether the store employees helped him move the conveyors, and thus this assertion of error is not well-founded.
Williamson also argues that the trial court erred by not giving the following requested written jury charge:
3. The Court charges the jury that Defendant Raymond is liable to the Plaintiff for any negligent acts or omissions of his employee, done within the scope of his employment, and within the line of his duties.
On appeal, Williamson is attempting to pin liability on Raymond as a result of negligent acts or omissions of Raymond’s son or brother-in-law. However, Raymond could be held liable under an agency theory only if the acts or omissions of his employees occurred within the scope of their employment and within their line of duty. Thus, the court was correct in refusing to give this requested charge. Furthermore, Williamson’s theory of recovery in the complaint was not agency, but premises liability; in other words, plaintiff contends that Raymond was liable because he negligently allowed the conveyors to remain in the area where Williamson was working. The court gave both written jury charges requested by Williamson concerning this issue. Those charges provided:
1. The Court charges the jury that Defendant Raymond was under a duty to be reasonably sure that he was not inviting the Plaintiff Williamson into danger and to exercise ordinary care to render and keep his premises in a reasonably safe condition.
2. If you are reasonably satisfied from the evidence that Defendant Raymond failed to exercise ordinary care to render and keep his premises in a reasonably safe condition, and that, as a proximate consequence thereof, the Plaintiff Williamson was injured, then the Defendant Raymond is guilty of negligence.
The court also gave the following written charge requested by Raymond:
I charge you, ladies and gentlemen of the jury, that a landowner is not liable to an invitee on its premises because of an injury to the invitee resulting from an open and obvious dangerous condition of which the invitee is aware or of which he should be aware in the exercise of reasonable care, and if you are reasonably satisfied from the evidence in this case that plaintiff suffered his injuries and damages as a proximate result of an open and obvious dangerous condition of which plaintiff was aware or should have been aware in the exercise of reasonable care, then your verdict must be for the defendant.
In his response to Raymond’s request for admission of facts, as well as at trial, Williamson admitted that the conveyors were open and obvious to his view and that he had moved at least three of the conveyors prior to his injury. Thus, there was evidence upon which the jury could have based its finding that Raymond was not liable for Williamson’s injury. It is well settled in Alabama that this Court will not disturb a jury verdict unless it is plainly and palpably wrong and against the great weight of the evidence. Strait v. Vandiver, 472 So.2d 1034 (Ala.1985). The case before us is not such a case.
Finally, Williamson contends that counsel for Raymond made certain improper remarks during closing argument, and that his counsel should have been able to respond to those remarks in kind. More specifically, during his closing argument, counsel for Raymond stated that Williamson was seeking to “take money from this man [Raymond].” Counsel for Williamson asserted that this reference was improper, and, in a meeting with the court in chambers, asked the court to allow him to inform the jury that there was liability insurance coverage in this case and that no money would be taken from Raymond. Williamson argues that the court’s refusal to allow this rebuttal was error and requires a reversal of the judgment. The *613 language objected to appeared in the following portion of counsel’s closing argument:
Let’s look at the facts in this case. What are those conveyors that are sitting out there? What were they leaning up against the building? Were they open and obvious? I say they were. He says they were, but more importantly the man that got hurt is seeking to take money from this man, testified on numerous occasions that they were open and obvious, when they were leaning up against the building, when he got there, when he went to paint that side of the building, when they were thrown down like firewood against the ladder and when he went to reach for the paint, they were still open and obvious the whole time.
A reference made in passing, such as the one in the case before us, is not the kind that is so prejudicial as to require a reversal. This is certainly not an example of the classic kind of argument calculated to prey upon the emotions of the jury. What Williamson’s counsel sought to do in rebuttal, however, has generally been regarded as improper. See C. Gamble, McElroy’s Alabama Evidence § 189.04 (3d ed. 1977). For the most part, the law of this state has precluded counsel from making any reference to the fact that a defendant has liability insurance. We are of the opinion that the “cure” in this case would have been more prejudicial than the alleged impropriety, and, therefore, we agree with the court’s ruling on the matter.
For all of the above-stated reasons, the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and STEAGALL, JJ., concur.